UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* STEFAN ROSE, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH TRUST OF DADE COUNTY,<br> d/b/a JACKSON MEMORIAL HOSPITAL,<br>and<br>UNIVERSITY OF MIAMI,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MAGISTRATE JUDGE JOHNSON<br><br>FILED IN CAMERA<br>AND UNDER SEAL<br><br>CASE NO.<br>**97-3633**<br>**CIV-LENARD** |

FILED BY __ D.C.
97 NOV 13 PM 3:41
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

## COMPLAINT

### Preliminary Statement

This Complaint is based upon a scheme conducted by the Defendants, HEALTH TRUST OF DADE COUNTY d/b/a JACKSON MEMORIAL HOSPITAL, and the UNIVERSITY OF MIAMI, to defraud the United States of more than twenty-five million dollars ($25,000,000) in the operation, administration, and supervision of the Medicare and Medicaid health insurance programs, maintained by the United States Department of Health and Human Services. The Defendants defrauded the United States by filing false claims pertaining to hospital outpatient services provided to Medicare beneficiaries and Medicaid recipients by hospital residents. These claims were false for the reason that services provided to outpatients at Jackson Memorial Hospital were furnished by residents who were not supervised by teaching physicians in the manner and form required by the Medicare and Medicaid programs.

1

Plaintiff, Stefan Rose, M.D., through his undersigned counsel, acting on behalf of and in the name of the United States of America, brings this civil action under the *qui tam* provisions of the federal False Claims Act; and hereby alleges the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1345, and 31 U.S.C. § 3732(a).

2. Many of the alleged acts arose in Dade County, in the Southern District of Florida; further, both Defendant entities are subject to personal jurisdiction, and transact business, in the Southern District of Florida. Venue is therefore proper in this District under 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. § 3732(a).

### Parties

3. Plaintiff, Dr. Stefan Rose, M.D., ("Dr. Rose") is a citizen of the United States and resident of Miami, Florida; he is bringing this suit in the name of, and on behalf of, the United States of America.

4. None of the allegations set forth in this Complaint is based upon a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing; in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or in the news media.

5. Dr. Rose has direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(e)(4)(B), derived through his experience as a medical student at the University of Miami and through his participation as a resident in the psychiatric program at Jackson Memorial Hospital, and he has voluntarily provided such information to the government prior to filing this Complaint.

6. Dr. Rose has standing to bring this law suit on behalf of and in the name of the United States (a) pursuant to 31 U.S.C. § 3730(b), and (b) pursuant to the economic injury suffered by Dr. Rose due to the Defendants' actions as alleged in this Complaint, in that the Defendants appropriated his time and experience as a medical doctor without, in return, the agreed to provision of supervision and training during his participation in the Jackson Memorial Hospital residency program, which program Dr. Rose entered in anticipation of such supervision and training.

7. Defendant Health Trust of Dade County, doing business as Jackson Memorial Hospital ("the Hospital"), is a Florida corporation with its principle offices and facilities located at Miami, in Dade County, Florida.

8. The University of Miami ("the University") is a private Florida corporation with its principle offices located at Miami, in Dade County, Florida.

9. At all times pertinent to this Complaint, the business of Defendants Jackson Memorial Hospital and the University of Miami was to provide health services to patients, including indigent patients and patients eligible for coverage under the Medicare and Medicaid programs.

### Teaching Hospitals Under the Medicare and Medicaid Programs

*A. The Medicare Program*

10. At all times pertinent to this Complaint, the Social Security Act (Title 42, United States Code, Sections 1395 *et seq.*) was in full effect, and had established the Medicare program, which provides medical insurance benefits for individuals aged sixty-five years of age or older, or to disabled individuals, who are entitled to Social Security benefits (hereinafter "Medicare beneficiaries"). The Medicare program consists of several parts, including:

3

a) Part A ("Medicare Part A"), which provides insurance for inpatient hospital and hospital-related services for Medicare beneficiaries; and

b) Part B ("Medicare Part B") which provides insurance for outpatient hospital services, and for medical services provided by physicians and other providers to non-hospitalized Medicare beneficiaries.

11. At all times pertinent to this Complaint, the Medicare program was administered in the various states by private insurance carriers which, pursuant to contracts with the United States Department of Health and Human Services ("H&HS"), served as fiscal intermediaries to receive, adjudicate, and pay Medicare claims submitted to it by Medicare beneficiaries, physicians or providers; in Florida, two companies, Aetna Life Insurance Company ("Aetna") and Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross and Blue Shield"), served as fiscal intermediaries for the Medicare program.

12. The Health Care Finance Administration ("HCFA") is an agency of the United States Department of Health and Human Services ("H&HS"), and, at all time pertinent to this Complaint, was responsible for the operation, administration, and supervision of the Medicare health insurance program.

*B. The Medicaid Program*

13. At all times pertinent to this Complaint, the Social Security Act of the United States of America had established the Medicaid program (Medicaid), which assists states in providing necessary medical services, supplies, and medications to families with dependent children, and to aged, blind, and disabled individuals (Medicaid recipients) with insufficient income to pay the cost of such services.

14. At all times pertinent to this Complaint, federal regulations governing the Medicare program, regarding reimbursement for the provision of outpatient services, were applicable to the Medicaid program in the State of Florida, pursuant to 42 C.F.R. §§ 440.20(a)(4) and 440.220(a)(4), and the State of Florida Title XIX Plan.

15. At all times pertinent to this Complaint, pursuant to Florida law and in accordance with the Medicaid portion of the Social Security Act, the Florida Agency for Health Care Administration (AHCA), and its predecessor agency, the Florida Department of Health and Rehabilitative Services (HRS), administered a statewide program whereby AHCA and HRS would reimburse medical doctors and other providers for proving medical care to Medicaid recipients.

16. Commencing in or around July 1994, and continuing until the date of this Complaint, the Unisys Corporation (Unisys) has held a contract with HRS and AHCA to serve as the fiscal intermediary to receive, adjudicate, and pay Medicaid claims submitted to it by Medicaid providers; prior to that date, Consultech, Inc., (Consultech) held this contract with HRS and served as such fiscal intermediary.

*C. Teaching Hospitals and the Medicare Program*

17. At all times pertinent to this Complaint, the following terms were applicable under the Medicare and Medicaid programs:

(a) a "teaching hospital" was a public or private entity which is engaged in a graduate medical education program which has been approved by one of the following: the Accreditation Council for Graduate Medical Education of the American Medical Association; the Committee on Hospitals of the Bureau of Professional Education of the American Osteopathic Association; the Council on Dental Education of the American Dental Association; and the Council on Podiatric Medical

Education of the American Podiatric Association;

(b) a "resident" was an individual who participated in an approved graduate medical education program;

(c) a "fellow" was a resident who participated in an approved graduate medical education program for an extended period of time; and

(d) a "teaching physician" was a physician, other than a resident, who involved residents in the care of his or her patients.

18. At all times pertinent to this Complaint, Part A of the Medicare Program allowed payment for the salaries of hospital residents, and allowed reimbursement for the teaching activities provided to hospital residents by teaching physicians.

19. At all times pertinent to this Complaint, a teaching hospital seeking reimbursement under the Medicare Part B or Medicaid programs for services provided to a particular beneficiary or recipient would submit a patient specific claim for payment to the appropriate fiscal intermediary; such claim would be submitted either on a "Health Insurance Claim Form" (Form HCFA 1500), or through the Electronic Medium Claims system, which form and system called for the submission of certain information relating to the identity of the beneficiary or recipient, the services provided, the authorization of such treatment, and a certification by the teaching physician regarding the services for which payment was requested:

(a) for the Medicare program, this certification stated, in pertinent part, that these services:

> [W]ere personally rendered by me or were rendered incident to my professional service by my employee under immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations;

6

and,

(b) for the Medicaid program, this certification stated, in pertinent part, that these services:

> [W]ere personally rendered by me or my employee under my personal direction.

### The Hospital and the University

*A. The Working Agreements*

20. At all times pertinent to this Complaint, the Hospital and the University functioned together under the Basic Affiliation Agreement ("the Agreement"), which agreement provided the following:

(a) The University, through members of the faculty of its Medical School (the "faculty"), provided medical care for all patients of the Hospital, including inpatients, outpatients, and emergency patients, and the Hospital paid to the University the reasonable cost of the University's faculty members supervising the Hospital's house staff, including residents, in the care of such patients;

(b) The University, through its faculty, assisted the Hospital in the general management and supervision of operations and training of house staff;

(c) Teaching and patient care was, at all times, carried on and supervised by members of the faculty; and

(d) The University was responsible for assigning faculty as requested by the Hospital to provide administrative and supervisory services at the Hospital.

### B. The Outpatient Clinics

21. At all times pertinent to this Complaint, Jackson Memorial Hospital maintained and operated outpatient clinics ("the Jackson Outpatient Clinics") which provided non-emergency medical care on an outpatient basis to members of the communities of Dade County, Florida, and the surrounding areas, such members including those who were Medicare beneficiaries and Medicaid recipients.

22. The Jackson Outpatient Clinics consisted of one or more separate clinics maintained by each of various departments within the Hospital, including the Departments of Psychiatry; Family Medicine; Internal Medicine; Neurology; Pediatrics; Dermatology; General Surgery; Plastic Surgery; Oncology Surgery; and Cardiothoracic Surgery.

23. At all times pertinent to this Complaint, the Jackson Outpatient Clinics were staffed by residents at the Hospital; these residents furnished all the medical services and procedures provided at these clinics to the Hospital's outpatients.

24. At all times pertinent to this Complaint, the duties of faculty members of the University of Miami Medical School included serving as teaching physicians for the residents during the operation of the Jackson Outpatient Clinics.

## COUNT ONE

### Medicare False Claims for Services Provided to Outpatients by Residents

25. The Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs one through twenty-four of this Complaint, and further charges:

### The Fraud: Prior to July 1, 1996

26. At all times pertinent to this Complaint, until in or about July 1, 1996, Part B of the Medicare program provided reimbursement for inpatient and outpatient medical services and procedures furnished directly by teaching physicians, or by hospital residents under a teaching physician's direct and identifiable supervision and control.

27. At all times pertinent to this Complaint, the medical services and procedures furnished by the Hospital's residents at the Jackson Outpatient Clinics were provided without the direct and identifiable supervision and control of a teaching physician, in that the teaching physicians assigned to these clinics would not, and did not, personally and directly supervise, control, or observe the care given by residents to individual patients.

### The Fraud: Beginning July 1, 1996

*A. General Rule for Outpatient Services*

28. Beginning in or about July 1, 1996, and continuing until the date of this Complaint, Part B of the Medicare program provided reimbursement for hospital outpatient medical services and procedures where, with the exception of evaluation and management services, the following conditions were met:

(a) if the services and procedures were furnished by a resident, then only where they were furnished in the presence of a teaching physician, pursuant to 42 C.F.R. § 415.170(b); and

(b) if a resident participated in furnishing the services and procedures, then only where a teaching physician was present during the key portion of such service or procedure, pursuant to 42 C.F.R. § 415.170(b).

29. At all times pertinent to this Complaint, the teaching physicians assigned to the Jackson Outpatient Clinics would not be, and were not, present during the furnishing of medical services and procedures to individual patients, including the furnishing of the key portions of such services or procedures.

*B. Exception for Evaluation and Management Services*

30. Beginning in or about July 1, 1996, and continuing until the date of this Complaint, Part B of the Medicare program provided reimbursement for outpatient patient evaluation and management services, furnished by a hospital resident without the presence of a teaching physician, only where all of the following conditions had been met, pursuant to 42 C.F.R. § 415.172(a):

(a) the teaching physician must not have directed the care of more than four residents at any given time;

(b) the teaching physician must have directed the care of the beneficiary from such proximity as to constitute immediate availability;

(c) during the care of the beneficiary, the teaching physician must have,

    (i) had no other responsibilities;

    (ii) assumed management responsibilities for those beneficiaries seen by the residents;

    (iii) ensured that the services provided were appropriate;

    (iv) reviewed with each resident during or immediately after each visit, the beneficiaries medical history, physical examination, diagnosis, and record of treatments and therapies; and,

  (v) documented the extent of the teaching physician's participation in the review and direction of the services furnished to each beneficiary.

31. At all times pertinent to this Complaint, the teaching physicians assigned to the Jackson Outpatient Clinics would and did supervise more than four residents at any one time.

32. At all times pertinent to this Complaint, some teaching physicians assigned to the Jackson Outpatient Clinics would and did:

  (a) fail to be present during the operation of the clinics to which they were assigned;

  (b) engage in other responsibilities, that is, treat their own patients, during the operation of the clinics; and

  (c) fail to review with each resident, during or immediately after each visit, the medical history, physical examination, diagnosis, and record of treatments and therapies taken from or furnished to each beneficiary or recipient treated by such resident.

### The False Claims

33. At all times pertinent to this Complaint, the Defendants knowingly prepared and submitted, and caused to be prepared and submitted, claims to H&HS for medical services and procedures furnished by residents to Medicare beneficiaries in the Jackson Outpatient Clinics, such claims being false and fraudulent in that,

> the Defendants prepared and submitted claims for such beneficiaries and recipients which stated that the medical services and procedures for which payment was being demanded were services and procedures personally rendered by a teaching physician, or rendered incident to a teaching physician's professional service by such physician's employee under his immediate personal supervision, except as otherwise expressly permitted by Medicare regulations;

whereas, in truth and in fact, as the Defendants then knew,

11

the aforesaid services and procedures were rendered by residents, that is, they were not rendered by a teaching physician; nor were they rendered incident to a teaching physician's professional service by such physician's employee under his immediate personal supervision; and nor was the manner of the furnishing of such services and procedures, in the Jackson Outpatient Clinics, expressly permitted by Medicare regulations.

## The Charge

34. Beginning on an unknown date prior to January 1995, and continuing until the date of this Complaint, Defendants Health Trust of Dade County, d/b/a Jackson Memorial Hospital, and the University of Miami, knowingly presented, or caused to be presented, to the United States Government for payment or approval, false or fraudulent claims, these claims being the above described Medicare reimbursement requests submitted on HCFA 1500 Forms, or transmitted through the Electronic Medium Claim system; each such request, for each Medicare beneficiary, being in violation of 31 U.S.C. § 3729(a)(1).

35. As a result of the conduct of the Defendants Health Trust of Dade County, d/b/a Jackson Memorial Hospital, and the University of Miami, as described in this Complaint, the United States suffered actual damages.

## COUNT TWO

### Medicaid False Claims for Services Provided to Outpatients by Residents

36. The Plaintiff reallege and incorporate by reference the allegations contained in paragraphs one through twenty-four, and paragraphs twenty-six through thirty-two of this Complaint, and further charges:

37. At all times pertinent to this Complaint, partial funding for the Medicaid program in the State of Florida was provided by the United States Department of Health and Human Services through the Florida Agency for Health Care Administration and the Florida Department of Health and Rehabilitative Services.

### The False Claims

38. At all times pertinent to this Complaint, the Defendants knowingly prepared and submitted, and caused to be prepared and submitted, claims to H&HS for medical services and procedures furnished by residents to Medicaid recipients in the Jackson Outpatient Clinics, such claims being false and fraudulent in that,

> the Defendants prepared and submitted claims for such beneficiaries and recipients which stated that the medical services and procedures for which payment was being demanded were services and procedures personally rendered by a teaching physician, or rendered by such physician's employee under his personal direction, except as otherwise permitted by applicable regulations;

whereas, in truth and in fact, as the Defendants then knew,

> the aforesaid services and procedures were rendered by residents, that is, they were not rendered by a teaching physician; nor were they rendered by such physician's employee under his personal direction; and nor was the manner of the furnishing of such services and procedures, in the Jackson Outpatient Clinics, otherwise permitted by applicable regulations.

## The Charge

39. Beginning on an unknown date prior to January 1995, and continuing until the date of this Complaint, Defendants Health Trust of Dade County, d/b/a Jackson Memorial Hospital, and the University of Miami, knowingly presented, or caused to be presented, to the United States Government for payment or approval, false or fraudulent claims, these claims being the above described Medicaid reimbursement requests submitted on HCFA 1500 Forms, or transmitted through the Electronic Medium Claim system; each such request, for each Medicaid recipient, being in violation of 31 U.S.C. § 3729(a)(1).

40. As a result of the conduct of the Defendants Health Trust of Dade County, d/b/a Jackson Memorial Hospital, and the University of Miami, as described in this Complaint, the United States suffered actual damages.

## COUNT THREE

### Conspiracy to File False Claims with the Medicare and Medicaid Programs

41. The Plaintiff reallege and incorporate by reference the allegations contained in paragraphs one through twenty-four, paragraphs twenty-six through thirty-three, and paragraphs thirty-seven and thirty-eight of this Complaint, and further charges:

### The Charge

42. Beginning on an unknown date prior to January 1995, and continuing until the date of this Complaint, Defendants Health Trust of Dade County, d/b/a Jackson Memorial Hospital, and the University of Miami conspired with each other, and with other persons, both known and unknown, to defraud the Government by presenting or causing to be presented to the United States Department of Health and Human Services, for payment or allowance, false claims to the Medicare and Medicaid programs; these claims being the above described HCFA 1500 Forms and claims submitted through the Electronic Medium Claims System, in violation of 31 U.S.C. § 3729(a)(3).

## REQUEST FOR RELIEF

The Plaintiff, Dr. Stefan Rose, acting on his own behalf and in the name of the United States, hereby demands and seeks that judgment be entered in favor of the United States, and against Defendants Jackson Memorial Hospital and the University of Miami:

1. For treble damages incurred by the United States;

2. For civil penalties of ten thousand dollars ($10,000) for each false claim submitted to the United States and the State of Florida, in the form of Medicare and Medicaid claims submitted on a HCFA Form 1500, or through the Electronic Medium Claims system;

3. For a civil penalty of ten thousand dollars ($10,000) for the conspiracy entered into by the Defendants to defraud the Government by getting false and fraudulent Medicare and Medicaid claims allowed and paid;

4. For interest on: the above treble damages, from the date on which the damages were incurred; and on the above civil penalties, from the date on which this Complaint is served upon the Defendants;

5. For all costs and expenses of this civil action; and

6. For such other and further relief as the Court deems just and equitable.

In addition, the Plaintiff, Dr. Stefan Rose, acting on his own behalf, demands and seeks that an award be made in his favor as follows:

1. For twenty-five percent (25%) of the proceeds collected by the United States, if the United States proceeds with and conducts this action; or for thirty percent (30%) of such proceeds if the United States does not so proceed;

2. For an amount for reasonable expenses necessarily incurred by Dr. Stefan Rose in the prosecution of this action;

3. For all reasonable expenses incurred by Dr. Stefan Rose in relation with these proceedings, plus all reasonable attorney's fees and costs; and

4. For such other and further relief to which Dr. Stefan Rose may show himself justly entitled.

### Demand for Jury Trial

Plaintiff hereby demands that this matter be tried before a jury.

Respectfully submitted,

By: *[signature]*
ANDREW GROSSO
2300 N Street, N.W., Suite 600
Washington, D.C. 20037
Telephone: (202) 663-9041
Facsimile: (202) 663-9042
Florida Bar No. 998583

*[signature]*
JANE SERENE RASKIN
Raskin & Raskin, P.A.
2937 S.W. 27th Avenue, Suite 206
Miami, Florida 33133
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
Florida Bar No. 848689

Attorneys for Stefan Rose, M.D.

Dated Nov. 13, 1997

# CIVIL COVER SHEET

**97-3633**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

UNITED STATES OF AMERICA,
ex rel. STEFAN ROSE, M.D.

**DEFENDANTS**  CIV-LENARD

HEALTH TRUST OF DADE COUNTY,
d/b/a/ JACKSON MEMORIAL HOSPITAL,
and
UNIVERSITY OF MIAMI

MAGISTRATE JUDGE JOHNSON

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

A-DADE 97CV3633/JAG/LPJ

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Jane Serene Raskin, Esq.
Raskin & Raskin, P.A. 2937 S.W. 27th Ave.
Suite 206, Miami, FL 33133 (305) 444-3400

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
(DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

☒ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated of Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Qui Tam FalseClaims Act,
31 U.S.C. Sec. 3729

**IVa. _____ days estimated (for both sides) to try entire case**

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander  ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability  **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine  ☒ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability  ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle  ☐ 380 Other Personnel Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability  ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting  **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment  ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations  ☐ 530 General | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare  ☐ 535 Death Penalty |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights  ☐ 540 Mandamus & Other |  |  | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property |  ☐ 550 Civil Rights * A or B |  |  | * A or B |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1. Original Proceeding
☐ 2. Removed From State Court
☐ 3. Remanded from Appellate Court
☐ 4. Refiled
☐ 5. Transferred from another district (Specify)
☐ 6. Multidistrict Litigation
☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ _____
Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: 11-13-97
SIGNATURE OF ATTORNEY OF RECORD: RASKIN & RASKIN

UNITED STATES DISTRICT COURT
S/F 1-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. _____  Amount: 150.00
Date Paid: 11/13/97  M/ifp: _____